UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE:

    NASHWA KATTOUAH,                    Case No.: 09-53287-WS
                                                          Chapter 13
_____/        Hon. Walter Shapero

        Debtor(s).

## OPINION ON VALUE OF DEBTOR'S RESIDENCE INCIDENT TO CREDITOR'S MOTION TO DISMISS AND OBJECTIONS TO CONFIRMATION

One of Debtor's Creditors ("Creditor") filed (1) a Motion to dismiss this chapter 13 case on bad faith filing grounds; and (2) objections to plan confirmation on both bad faith and undervaluation of Debtor's residence grounds. Evidentiary hearings were held and it was determined the Court should first determine the value of the residence as that figure could play a pivotal role in the disposition of the other matters. The case was filed on April 29, 2009, and the parties agreed that date should be the residence valuation date. In the context of the various pending motions and objections, the question of who bears the burden of proof might be somewhat complicated, i.e., the Debtor normally has the burden of proving good faith in the context of confirmation of a plan, whereas, the burden of at least going forward with the evidence in support of an objection to confirmation is often allocated to the objecting party. One could also logically argue that in matters of valuation only, the party objecting to a debtor's valuation properly bears the burden of proof. The foregoing said, the Court has reached its indicated conclusion irrespective of who has the burden of proof.

In her schedules and proposed chapter 13 plan, the Debtor listed the value of the property (a large home built by her located in Oakland County in suburban Detroit) at $500,000. In 2007,

1

she had obtained a construction loan followed by an end loan mortgage upon completion for some $500,000, incident to which the mortgagee obtained an appraisal as of November 2007, of $975,000. At the mortgage closing, Debtor signed various closing documents, one of which was a mortgage application which stated the $975,000 appraisal figure, her signature thereon being over an averment that the statements contained in that application document were true.

The Creditor argues for a value of not less than $750,000, and more specifically, of $819,000, based on both the referred to mortgage application appraisal and the testimony of Creditor's valuation witness. That witness, while not a licensed appraiser, was an experienced real estate broker. Debtor argues for the $500,000 value set forth in her schedules, as supported by her own testimony and that of a likewise experienced real estate broker who likewise was not a licensed appraiser.

This is a case of the Court having to decide whose testimony is the more credible and with what valuation result. In doing so, the Court notes that brokers' valuations, while reflecting a certain knowledge of the marketplace, as a general rule are somewhat less credible that those of professional appraisers - providing the professional's appraisal is able to be tested by appropriate cross-examination. Debtor's own testimony as to value and particularly as to specific comparables and the differences between them, was not buttressed by the kind of detail and investigation as the other two brokers' conclusions. As to the latter, there were also deficiencies, based on variations in the comparables based on size, location, and other variables.

The two testifying brokers agreed more or less that since the 2007 date of the mortgage, market values had decreased at the rate of some five to six percent per year. Creditor, in part, arrived at his valuation by starting with the 2007 mortgage appraisal figure of $975,000, and

2

09-53287-wsd    Doc 131    Filed 06/02/10    Entered 06/03/10 08:39:04    Page 2 of 6

reducing it by those indicated annual percentages amounts. That is somewhat logical, but only if you give full credence to the indicated starting figure. To the extent that figure is discounted or is reduced, the value would be lower, and, of course that computed analysis assumes that to be the better way to arrive at the value on the agreed date, as opposed to, direct opinions as to value as of that date. The referred to 2007 mortgage application was signed by Debtor, accompanied by Uniform Residential Appraisal Report prepared by Pamela Tennant of Crossroads Real Estate Appraisal. Ms. Tennant signed the report and the document indicated she was a licensed appraiser in Michigan during the relevant time period. The report specifies that the intended use of this appraisal was for "a mortgage finance transaction."

Creditor also presented Beth Borson as an expert witness to support the assertion the property should be valued significantly more than $500,000. Ms. Borson is a partner with a Remax Real Estate Office in Bloomfield, Michigan, and was first licensed as a realtor in 1991. She subsequently became licensed as an associate broker and later as a broker. Ms. Borson testified that she is not an appraiser and that her valuation determinations are based on market analysis. She prepared a report on June 23, 2009, that is admitted as Exhibit 16 which contains an opinion that property "should sell [for] between $700,000 and $800,000."

Debtor, as owner (and an experienced broker or salesperson herself) testified personally. She stated that she did not have an opportunity to review the 2007 mortgage appraisal referred to in the mortgage application at or before the time she signed the document in question. Debtor stated she performed a recent market analysis herself on property in reaching the scheduled $500,000 figure. Her search parameters included distance, age, and size of lot. She compared the selling prices of six to eight comparable properties, but did not retain the supporting papers in her file. The fact

property was located on a busy street was one factor she cited to explain why this property may be less valuable than other homes of this size. She expressed skepticism as to testimony that being located on a busy street is a positive selling point for homes sought by those coming from the Chaldean culture.

Debtor also relies on the testimony of real estate broker Melonie Bishop who has been licensed as a broker for nearly 24 years and sells roughly "45-50" homes per year in Oakland County. That broker stated that due to changes in appraisal guidelines, appraisals routinely come in far below "offer" or listing prices. Her market analysis took into account what she felt were comparable homes in the area sold within a relatively recent timeframe. The top range of comparable homes was fixed at $650,000. Her market analysis concluded the property was worth around $500,000 as of September 2009, and that it could be worth $20,000 to $40,000 less in January 2010. Creditor's counsel asked about other more expensive properties, which Ms. Bishop said were not comparable. Ms. Bishop's written work does not appear to have been entered as an exhibit either on the docket or on the record.

While both brokers witnesses tended to agree on the percentage ranges the real estate market has annually decreased since 2007, those are averages. In this Court's view, the percentage decrease in value of the home in this case would be materially greater than the average because of (a) its large size; (b) the fact it is directly located on one of the area's largest and busiest thoroughfares; and (c) the thinness of the likely market generally for such a home - a thinness made even more so by the weak general current market conditions.

4

In weighing and evaluating the indicated evidence, there are a number of reasons to minimize the weight afforded the 2007 mortgage appraisal figure argued for as the starting point of one of Creditor's value analysis:

(1). The mortgage appraiser was not made available for cross-examination.

(2). Creditor's reliance on the application document containing the $975,000 figure and the Debtor's signature thereon, is misplaced. At best (or worst), it is properly seen as not more than Debtor's acknowledgment that the mortgagee had obtained a $975,000 appraisal - to be differentiated from any representation or agreement by Debtor that such was the then true fair market value of the property.

(3). A valuation for mortgage application purposes is not of the same nature as one for the purposes involved in this case.

(4). It has become fairly well documented that in 2007 and before, in the context of the burgeoning mortgage market, mortgage property appraisals were routinely inflated.

(5). The substantial discrepancy between the original loan amount (some $500,000) and the $975,000, while not directly explained, permits an inference that the parties to the mortgage were not particularly relying on the veracity of that appraisal figure to justify the mortgage transaction.

For the above reasons, this Court concludes the Creditor's starting point of one of its valuation calculations is subject to material question and is essentially of much lesser weight in the inquiry. The Court has concluded, based primarily on the other evidence, that Debtor's position is closer to the mark.

## **CONCLUSION**

5

09-53287-wsd    Doc 131    Filed 06/02/10    Entered 06/03/10 08:39:04    Page 5 of 6

Given the foregoing in the context of what continues to be a soft, if not softening real estate market, as well as the location of the property and its review of the testimony, the Court concludes the proper valuation for the purposes of the various pending matters is $575,000.

**Signed on June 02, 2010**

                **/s/ Walter Shapero**
            **Walter Shapero**
            **United States Bankruptcy Judge**

6

09-53287-wsd    Doc 131    Filed 06/02/10    Entered 06/03/10 08:39:04    Page 6 of 6