UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

Nashwa Kattouah,                      Case No. 09-53287
                                          Chapter 13
          Debtor.                        Hon. Walter Shapero

_____/

## MEMORANDUM OPINION INCIDENT TO CONFIRMATION OF CHAPTER 13 PLAN

Nashwa Kattouah ("Debtor") filed her voluntary Chapter 13 petition on April 28, 2009. On June 23, 2009, the Chapter 13 Trustee filed various objections to Debtor's proposed Chapter 13 Plan, including a 11 U.S.C. § 1325(a)(3) objection relating to overstatement of various expenses. On June 30, 2009, Mark A. Goldman & Associates ("Creditor") filed a Motion to Dismiss the Debtor's case (Docket No. 32) pursuant to 11 U.S.C. §§ 1325(a)(3) and (a)(7) based on alleged factual misrepresentations and omissions made by the Debtor in her Schedules and Statement of Financial Affairs ("SOFA"). Some, but not all, of the Creditor's objections various mirror some of those of the Trustee. On that same date, Creditor also filed an Objection to Confirmation of Debtor's Chapter 13 Plan. In its Motion to Dismiss, Creditor alleged that Debtor failed to disclose ownership of, or a transfer of, the following pieces of real property or undervalued such:

    (1) 15742 Catalpa, Southfield, MI: Debtor failed to disclose ownership of this parcel in her Schedules and at the 341 Meeting of Creditors.

    (2) Lot 3, Hickory Knoll's Subdivision, Bloomfield Hills, MI: Debtor failed to disclose ownership of this parcel in her Schedules and at the 341 Meeting of Creditors. Debtor also failed to disclose this parcel on her Amended Schedules.

    (3) 2812 S. Telegraph Rd., Bloomfield Hills MI: Debtor owned this parcel in fee simple prior to transferring such to her husband as entireties property. She failed to disclose this transfer in paragraph 10 of her SOFA and undervalued such in her Amended Schedule A.

1

(4) Lot 4, Hickory Knoll's Subdivision, Bloomfield Hills, MI: Debtor transferred this parcel on March 16, 2005 to Wisam Fandakly. That transfer was not listed on her SOFA.

(5) 27428 Spring Arbor, Southfield, MI: Debtor disclosed this property, but undervalued it.

Creditor's Motion to Dismiss was set for an evidentiary hearing, which was originally scheduled for September 9, 2009. An Order Consolidating the Hearings on the Motion to Dismiss and Objection to Confirmation was entered on November 5 2009. A Hearing on Oral Arguments was set for February 4, 2010. At that hearing, the Court determined that the appropriate course of action would be to first rule on the value of 2812 S. Telegraph Rd., Bloomfield Hills, MI and the matter was taken under advisement. On June 2, 2010, the Court issued an Opinion on Value of Debtor's Residence Incident to Creditor's Motion to Dismiss and Objections to Confirmation (Docket No. 131). Creditor filed a Motion for Reconsider/Rehearing on June 16, 2010 (Docket No. 139). The Court entered an Order Denying that Motion on August 12, 2010 (Docket No. 158).

On November 19, 2010, Creditor filed its Second Amended Objections to Confirmation (Docket No. 182). Creditor objected to numerous expenses indicated on Debtor's Schedules, alleging that Debtor had overstated the following expenses:

(1) home maintenance - $200

(2) food - $900

(3) laundry/dry cleaning - $100

(4) health insurance - $300

(5) charitable contributions - $100

(6) water - $100

On November 22, 2010, the Debtor filed Amended Schedules I and J (Docket No. 184), significantly changing her previously filed income and expense amounts. Specifically, Debtor decreased her home maintenance expense to $100, decreased her charitable contribution expense to $50, decreased her water expense to $80, and eliminated her health insurance expense. Debtor also decreased her income figure from $9,007.00 (June 24, 2009 amended schedule I income figure) to $5,302.00. At the hearing held on November 22, 2010, the Creditor argued that, since Debtor amended her Schedules shortly before that hearing, the Creditor needed additional time to review

those amendments. The Court then scheduled an evidentiary hearing on confirmation, which was held on December 15, 2010.

At that hearing, only the Debtor testified and various exhibits offered by the Creditor were received into evidence. The primary focus of that hearing was the Creditor's § 1325(a)(3) objection; i.e., that Debtor's most recently amended plan had not been proposed in good faith, which in essence substantially encompasses any other of the Creditor's objections with respect to the evidence. Given the prior hearings at which Debtor has testified and her testimony given at the confirmation hearing, the Court has concluded that Debtor is a credible witness,

As was made clear in *In re Alt*, 305 F.3d 413 (6th Cir. 2002), the guidelines for determining lack of good faith involve an inquiry into a number of non-exclusive factors, which the Court will review.

1. The Debtor's Income

Almost 20 months have passed between the date this Chapter 13 case was filed and the date the confirmation hearing was scheduled. This is an unusual and almost unheard of length of time. As noted, Debtor's income and that of her non-filing spouse has decreased materially during that period. The Court finds that the monthly income figure as provided in Debtor's recently filed amended schedule I, augmented by Debtor's previous statements under oath and her testimony at the confirmation hearing are credible and weigh in favor of the Debtor.

2. Debtor's Attorney Fees

The Debtor's attorney fees have been unusually, if not unprecedently high, largely due to Creditor's extensive filings of objections, motions, and other proceedings. To be sure, the Creditor has a legal right to do so, but in doing so, must understand and recognize that aside from Creditor's own attorney fees, in a Chapter 13 case, Debtor's attorney fees might eventually serve to materially decrease the ultimate dividend which might be paid to a now unsecured creditor, such as the Creditor has become in this case. Furthermore, the longer the pre-confirmation period and the more litigation involved, the greater the likelihood of relevant changes which might affect the plan and its confirmation. While this factor in any event is of minimum weight in the total inquiry, the very sizeable amount of fees in this case is either a neutral consideration or one favoring Debtor.

3. Expected Duration of the Chapter 13 Plan

This is a five year plan, which is a fact that weighs in favor of the Debtor.

3

### 4. Debtor's Sincerity in Filing

Debtor's initially filed schedules indicate $864,000 in secured debt, some $500,000 of which was on Debtor's residence, the valuation proceedings in relation to which are referred to above, and the remainder being on other properties. Unsecured debts totaled some $221,000, of which $100,000 was the debt listed as owing to the Creditor. That Creditor's aggressive pursuance of his claim might have been the immediate and actuating cause of the bankruptcy filing, as many courts have stated, does not perforce make the filing one not in good faith. If it were otherwise, the literally thousands of cases precipitated solely by imminent mortgage foreclosures, vehicle repossessions, or substantial judgments would have to be dismissed on lack of good faith grounds. There is no bad faith here on that account.

### 5. Debtor's Future Earnings Potential

As noted, the most recently filed schedule I credibly sets Debtor's current income situation, and likely that for the fairly near future, given Debtor's and her husband's dependence on the real estate market for any increases in income. Debtor's main source of current income is as a translator and the evidence does not indicate a sufficient likelihood of a material increase from that income source to support a lack of good faith objection. More importantly, should Debtor and her husband have a material increase in their income during the life of the plan from whatever source, Chapter 13 law provides a way to capture that for creditors. This factor weighs in favor of the Debtor.

### 6. Special Circumstances Such as High Medical Expenses

Debtor and her husband have in fact had increasing medical expenses due primarily to the the husband's apparently worsening, and required close monitoring of his, diabetic condition. The situation portends continuation of, if not increases in, the costs involved. This factor weighs in favor of the Debtor.

### 7. Frequency With Which Debtor Has Sought Relief

This is Debtor's first bankruptcy case, and this factor weighs in favor of the Debtor.

### 8. Circumstances Under Which the Debt Was Incurred

The schedules show consumer retail credit debt; loan debt; the debt to the Creditor (an attorney) (which arose from a judgment obtained by a client of Creditor against the Debtor which judgment was assigned to the Creditor by his client apparently in payment of attorney fees incurred in obtaining that judgment against Debtor). Debtor's attorney in that same case is also listed as a

4

creditor in this case. That mixed debt history does not show such a pattern or situation as would materially evidence lack of good faith.

### 9. Amount of Payment Offered Under the Proposed Plan

In this Court's view, Debtor has proposed and had been paying what Debtor's income and expenses enable her to. Incident to that, Debtor has increased somewhat proposed monthly payments pursuant to an agreement with the Trustee in apparent settlement of the Trustee's objections. This factor also weighs in favor of the Debtor.

### 10. Administrative Burden on the Trustee

Once confirmed, it appears that this plan will not impose any undue or unusual administrative burden on the Trustee.

### 11. Debtor's Living Expenses

As noted, these were the subject of not only the Creditor's objections, but in the very beginning, also the Trustee's objections - the latter having now apparently having withdrawn any objection she might have had on that account in the context of a negotiated increase in monthly payments. This is the major thrust of the Creditor's objections and was the subject of much discovery and costly discovery litigation. Even if Creditor's objections on this account might have some merit (and the Court has concluded that they do not), this is but one of the mentioned numerous factors to be considered in the good faith inquiry and in the face of the others does not dictate a finding of bad faith. As to the claim of excess expenses as enumerated above, while there might be some little doable belt tightening, whatever might be involved or be quantified, is for purposes of a good faith inquiry adequately dealt with by the proposed increase in plan payments. To be sure, not every dollar of Debtor's expenses has been accounted for by receipts. However, in a Chapter 13 case, we do not, and indeed cannot, make the failure of debtor to account for expenses to the penny a basis for a finding of bad faith - except possibly in the most extreme cases, which this case is not. Such would ignore the vagaries of life, health, and the economy and put confirmation at risk in most cases. Debtor's figures are close enough to permit a conclusion on this particular factor that Debtor has sustained her burden of proof. Furthermore, over time, and particularly in five years in the existing economy and job environment, one expense may go up and another may go down.

Within the total financial parameters of a plan, and indeed this plan, what must be kept in mind is that, when we talk about good faith, we are talking about the existence of an honest belief, an absence of malice, an absence of a design to defraud or seek an unconscionable advantage, and an honesty of purpose, or specifically an absence of an attempt to abuse the spirit of the bankruptcy code. Good faith does not necessarily require substantial, or indeed any, payment of unsecured claims. What is required is honesty of purpose under a flexible, case-by-case standard. The Court concludes its inquiry has encompassed such in this case to the end of a factual conclusion and finding that Debtor has borne her burden of affirmatively showing the plan has been proposed in good faith, and any other of Creditor's objections to confirmation should be denied. This Debtor deserves the opportunity to try and effectuate her proposed plan by its being confirmed.

Debtor shall prepare and present an order confirming the last proposed plan with the monthly increase agreed to with the Trustee.

```
         Signed on December 21, 2010
                              /s/ Walter Shapero
                         Walter Shapero
                         United States Bankruptcy Judge
```